**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**DANIEL LACEY and KATHRYN LACEY**                    **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO. 3:04CV646N**

**TONY HAKIMIAN and GLASS**
**EMPORIUM, d/b/a Glass Masters**                      **DEFENDANTS**

---

## MEMORANDUM OPINION AND ORDER

This matter came on for a bench trial before the undersigned United States Magistrate Judge, pursuant to a Consent to the Exercise of Jurisdiction by a United States Magistrate Judge, executed by the parties on October 15 and 20, 2005, and an Order of Referral entered by District Judge Tom S. Lee on October 26, 2005.  After the testimony and evidence had been submitted, the court took this matter under advisement, ordering that the parties simultaneously submit proposed Findings of Fact and Conclusions of Law.  Those documents were properly submitted, and the court has now reviewed them, as well as the evidence and testimony admitted at trial.  Having done so, and for the reasons more fully expressed below, the court is of the opinion that the Plaintiffs should recover from the Defendants the sum of $41,340.00, together with interest as provided by law.

The Plaintiffs are Daniel Lacey and Kathryn Lacey, who own property located at 2472-B Highway 49 South, Florence, Mississippi.  The Defendant, Glass Emporium of Marin, doing business as Glass Masters (by agreement of the parties, Tony Hakimian has been dismissed as an individual Defendant), is a California corporation that does business in Mississippi.  This court, therefore,  has diversity jurisdiction over this matter, by virtue of 28 U.S.C. § 1332.

Glass Masters engages in the business of repairing and replacing automobile windshields, operating out of a garage-like shop where vehicles pull into bays to be serviced.   Tony Hakimian

is the owner and sole shareholder of Glass Masters.  The Laceys and Glass Masters entered into a Lease Agreement, by which Glass Masters rented space in the Florence business for their operations. The Lease Agreement, which was drafted by the Laceys, was signed by Hakimian on September 27, 2002, and by the Laceys on October 18, 2002.

The Lease Agreement was for a term of five years, beginning on August 1, 2002, and ending on July 1, 2007 (the rent for the final month was prepaid).  The rental for the space escalated every year, as follows:

| | |
|---|---|
| Year 1: (August 1, 2002 - July 31, 2003) | $1,550.00 per month |
| Year 2: (August 1, 2003  - July 31, 2004) | $1,650.00 per month |
| Year 3: (August 1, 2004 - July 31, 2005) | $1,750.00 per month |
| Year 4: (August 1, 2005 - July 31, 2006) | $1,850.00 per month |
| Year 5: (August 1, 2006 - June 30, 2007) | $2000.00 per month |

The Lease provided that any improvements attached to the building would remain after Glass Masters vacated the property, and that the Laceys would furnish asphalt paving for the building. Glass Masters was to insure the building against any damages.  The Lease also contained the following provision:

> Any maintenance repairs up to the amount of $250.00 (Two Hundred Fifty Dollars) are to be assumed and paid by Lessee(s).  Those over and above that amount are to be assumed by Lessors.  Lessee(s) agree to keep the premises in a safe, neat and clean condition.  The Lessee(s) agree to hold Lessors harmless and not responsible for any loss or damage, due to fire, accident, theft, vandalism, acts of nature, or causes beyond their control.

On March 2, 2004, Hakimian called Daniel Lacey and informed him that Glass Masters wanted to vacate the building.  The parties agree that this conversation occurred; however, they

2

disagree as to the substance of the conversation.  Hakimian testified that he asked Lacey if he could terminate the lease and offered to sub-lease the building, if Lacey desired.  According to Hakimian, he had determined that the Florence location, while profitable, had too many potential customers' contacting the business for glass replacement, but failing to appear.  Hakimian believed that people in the Jackson, Mississippi, area decided that the Florence location was too far away.  Thus, he made a decision to move his business to a location nearer to Jackson.  Hakimian testified that he explained this to Lacey, who agreed that Glass Masters could vacate the building, so long as it paid the rent through the end of April, 2004, and surrendered the $2,000.00 prepayment of the last month's rent. In contrast, Daniel Lacey testified that Hakimian called him and flatly stated that he was going to vacate the building.  According to Lacey, Hakimian told him that he could either vacate the space or declare bankruptcy.  Lacey stated that he did not agree that Glass Masters could terminate the lease before the expiration date.

The parties agree that Glass Masters vacated the property before the end of the lease, although they disagree as to the date that the Laceys were able to re-take the property. The parties also disagreed about the condition of the building at the time Glass Masters moved out.  The Laceys claim that they had to replace the locks, repair structural damage from an accident in which a car ran into the building, repair holes left by Glass Master's sign, repair asphalt damaged by trucks (according to the Laceys, trucks were not supposed to use the asphalt driveway, but a gravel driveway in back of the building), remove a custom door, a telephone, and a drink machine, and clean and paint the building.  The Laceys also complain that Glass Masters left a fabricated counter in the building and that there were oil stains on the floors of the bays.  Witnesses for Glass Masters testified that they cleaned the building and offered to strip the floors and paint the walls; however,

Mr. Lacey instructed them to leave the building as it was, so that the next tenant could make its own improvements.  They dispute many of the other allegations of damages, including the claim that a car ran into the building.

After Glass Masters vacated the property, it sat empty until November 17, 2004, when it was leased to Design Tech Flooring.  Design Tech paid nothing for the first month, $700.00 for December 17 - 31, 2004, and $1,500.00 thereafter.  Design Tech occupied the building until December, 2005.  After that, the building again sat empty until just prior to the trial of this matter, when, on January 3, 2006, the Laceys leased the building to Concrete Design Unlimited.  Although evidence of that lease was not presented at trial, it was sent to the court shortly thereafter.  Concrete Design Unlimited pays $600 per month for the building, and its lease runs through December 31, 2006.

There is no question that the Laceys and Glass Masters had executed a valid contract for the lease of the subject property, and under Mississippi law, that contract should be construed by examination of the "four corners of the document."  *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2004), citing *McKee v. McKee*, 568 So. 2d 262, 266 (Miss. 1990).  Thus, "[i]f the language in the contract is clear and unambiguous the intent of the contract must be effectuated."  *Rotenberry*, 864 So. 2d at 270, citing *Pfisterer v. Noble*, 320 So. 2d 383, 384 (Miss. 1975).  The primary question in this lawsuit is whether Glass Masters can validly claim that the Lease Agreement between it and the Laceys was altered by a later, oral agreement to permit termination.  Mississippi's law on modifying a written contract by way of evidence of an oral agreement, or parol evidence, is clear:

> It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, vary or contradict judicial or official records or documents, or written instruments which dispose of property, or are contractual in nature, and which are

4

> valid, complete, unambiguous, and unaffected by accident or mistake.  This rule,
> which is known as the parol evidence rule, is one of substantive law and not merely
> one of evidence; and it obtains in equity as well as at law.

*Fuqua v. Mills*, 221 Miss. 436, 450, 73 So. 2d 113, 118-19 (1954).

The court finds that the Lease Agreement between the parties was intended to represent their full agreement as to the term of the lease.  The primary goal in judicial interpretation of written instruments is to give effect to the parties' intent, and, in doing so, the court must concern itself not with what may have been intended but with what was **actually said** in the words of the contract.  *HeartSouth, PLLC v. Boyd*, 865 So. 2d. 1095, 1105 (Miss. 2004).  The lease demonstrates that the intent of Glass Masters and the Laceys, at the time that they agreed on its terms, was that Glass Masters would occupy the property for five years.  Although it is unfortunate that a termination clause was not contained in the Lease Agreement that would permit a party to void the lease at an earlier date, the parties could not later insert one by way of an oral agreement.

Glass Masters was bound, therefore, by the terms of the contract, to pay the Laceys the agreed-upon sum for the duration of the contract.  The content of the conversation between Daniel Lacey and Hakimian is, therefore, irrelevant.  Through the evidence presented at trial as later supplemented without objection, the Laceys claim that they have lost rent up to the time of trial in the amount of $12,835.00 in 2004, and $3,500.00 in 2005, or a total of $16,335.00.  These sums take into account the rental income actually received from Design Tech Flooring.  The court finds that they are entitled to this sum from Glass Masters.

Another question raised at trial was whether the Laceys can recover future rents, or whether they must sue on those amounts as they become due.  Under Mississippi law, where the rents are due pursuant to the terms of a contract, the courts recognize a right of action for breach by anticipatory

repudiation. *Stableford v. Schulingkamp*, 218 Miss. 276, 281, 67 So. 2d 306, 308 (1953); *Weir v. Cooper*, 122 Miss. 225, 84 So. 184 (1920). The Laceys have reduced the amount of future rent claimed to the sum of $25,005.00, which takes into account the sums anticipated from Concrete Designs, and the court finds that they are entitled to that amount, also. Thus, Glass Masters must pay the Laceys the total sum of $41,340.00 to compensate them for the rent they lost by Glass Masters' vacating the building and failing to pay rent for the contractual term.

The Laceys also seek $9,865.41 in actual damages for repair and cleaning, as described above. This sum includes $3,000.00 that was billed to them from Design Tech for work performed by it on the floor of the rental space. However, Daniel Lacey testified at trial that this bill was not paid, and the court is of the opinion that it cannot collect that amount from Glass Masters. Moreover, the remaining repair items were either not satisfactorily proved at trial (e.g., damage to the metal siding allegedly caused by a car) or were in the nature of normal wear and tear to be expected in the use of commercial property (e.g., damage to asphalt allegedly caused by trucks that failed to use the gravel road). Therefore, the court finds that these amounts should not be paid by Glass Masters.

Finally, the Plaintiffs seek prejudgment interest and an award of $150,000.00 in punitive damages. In a diversity case, the matter of prejudgment interest is governed by state law. *Liberty Mutual Fire Insurance Co. v. Canal Insurance Co.*, 177 F.3d 326, 339 (5th Cir. 1999). Under Mississippi law, the court has discretion to award interest where the amount due is liquidated. *Id.*, citing *Hans Constr. Co. v. Drummond*, 653 So. 2d 253, 264 (Miss. 1995). Since the judgment in this matter is based upon the contractual obligation to pay a sum certain as rent, the court is of the

opinion that an award of prejudgment interest is warranted, to be calculated at the legal rate from the time that the Complaint was filed.

However, the court is of the opinion that punitive damages are not warranted in this case. In a breach of contract case, punitive damages are available only to a plaintiff who proves by a preponderance of the evidence "that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." *See Hamilton v. Hopkins*, 834 So. 2d 695, 703 (Miss. 2003) and the numerous cases cited therein. In *Carlo Corp. v. Casino Magic of La. Corp.*, 26 F. Supp. 2d 904 (S. D. Miss. 1998), Judge Russell analyzed the breach of contract cases in which punitive damages had been awarded by Mississippi courts. He found:

> Typically, those cases in which punitive awards have been allowed have involved insurance contracts and factually reveal a wide disparity of bargaining power and sophistication between the parties. In addition, often the plaintiff's only remedy absent punitive damages is the award of policy amounts; which sums are frequently insubstantial to large corporations.

*Id*. at 909. The contract in this case is an ordinary commercial lease agreement. Although Glass Masters is not an insubstantial corporation (Hakimian testified at trial that the 2004 income for all of his stores nationwide was about $48 million), the court finds that there was no real disparity in bargaining position or sophistication between the parties. The testimony at trial showed that the parties negotiated the lease terms, and the Lease Agreement itself was drafted by Kathryn Lacey. Moreover, the reason that Glass Masters left – to improve its business traffic – is in no way malicious or directed at the Laceys. It was merely a business decision, and there is nothing in the facts of this matter that would distinguish it from any other ordinary commercial breach of contract case. Thus, an award of punitive damages is not supported by the facts.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiffs, Daniel and Kathryn Lacey, are entitled to recover from the Defendant, Glass Emporium, doing business as Glass Masters, the sum of $41, 430.00, plus prejudgment interest at the legal rate from the date of the Complaint to this date, and postjudgment interest at the legal rate.  A separate Judgment will be entered in accordance with Fed. R. Civ. P. 58.

IT IS SO ORDERED AND ADJUDGED, this the 10th day of February, 2006.

     S/Alfred G. Nicols, Jr.     
UNITED STATES MAGISTRATE JUDGE
